**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

GOLDSTEIN GROUP HOLDINGS, INC.,

Plaintiff,

v.

HARTFORD INSURANCE COMPANY OF THE MIDWEST and NEW HAMPSHIRE INSURANCE COMPANY,

Defendants.

1:15-cv-03851-NLH-AMD

**OPINION**

**APPEARANCES**:

PETER J. KURSHAN
CHASE, KURSHAN, HERZFELD & RUBIN, LLC
354 LIVINGSTON PARKWAY
LIVINGSTON, NJ 07039
On behalf of Plaintiff

ERIN ELIZABETH NULTY
CLARK & FOX
951 HADDONFIELD ROAD
SUITE A-2B
CHERRY HILL, NJ 08002

STEPHEN C. PARKER
BUTLER SNOW LLP
6075 POPLAR AVENUE, SUITE 500
MEMPHIS, TN 38119
On behalf of Defendant Hartford Insurance Company of the Midwest

KATHRYN A. CALLAHAN
GARY S. KULL
CARROLL MCNULTY & KULL LLC
120 MOUNTAINVIEW BOULEVARD
P.O. BOX 650
BASKING RIDGE, NJ 07920

KEITH M. DETWEILER, ESQ.
NIELSEN, CARTER & TREAS, L.L.C.
3838 N. CAUSEWAY BLVD., SUITE 2850
METAIRIE, LA 70002
On behalf of Defendant New Hampshire Insurance Company

**HILLMAN, District Judge**

This case concerns flood insurance claims arising from damage caused by Superstorm Sandy to a home in Atlantic City, New Jersey. Presently before the Court are three summary judgment motions filed by each of the parties. For the reasons expressed below, Plaintiff's motion will be denied, and Defendants' motions will be granted.

## BACKGROUND

On October 29, 2012, Superstorm Sandy made landfall in New Jersey, causing flood damage to 107 N. Brighton Avenue, Atlantic City, New Jersey. At the time, the property was owned by Ismael Caban, with the front of the property insured for flood damage by Defendant Hartford Insurance Company of the Midwest and the rear of the property insured for flood damage by Defendant New Hampshire Insurance Company. Both insurance companies are Write-Your-Own ("WYO") Program carriers participating in the United States Government's National Flood Insurance Program ("NFIP"), pursuant to the National Flood Insurance Act of 1968, as amended, 42 USC § 4001, et seq. ("NFIA"), and they are appearing in their fiduciary capacities as the "fiscal agent of the United States." The NFIP is administered by the Federal

Emergency Management Agency ("FEMA"), underwritten by the U.S. Treasury, and all flood loss claims presented under the NFIP are paid directly with U.S. Treasury funds, including defense costs. A WYO Program carrier makes a percentage of the payment of any proper flood claims - the higher the claim payment, the more the WYO Program carrier is paid by FEMA.[1]

The Defendant insurance companies each issued Mr. Caban a Standard Flood Insurance Policy ("SFIP"), which is written by the federal government. Hartford issued to Mr. Caban a SFIP with policy limits of $184,800.00 for building coverage for the front of the property with the effective dates from December 2, 2011 through December 2, 2012. New Hampshire issued to Mr. Caban a SFIP with policy limits of $184,800.00 for building coverage for the rear of the property with the effective dates from September 8, 2012 to September 8, 2013. Bayview Loan Servicing ("Bayview") held the mortgage on the property and was identified as the mortgagee on the SFIP declarations page.

Prior to Superstorm Sandy, Mr. Caban had fallen in arrears on mortgage payments. Bayview instituted a foreclosure action in the Superior Court of New Jersey in Atlantic City on August 13, 2009, and a receiver was appointed and took custody of the property.

[1] The applicable federal regulations are found in Title 44 of the Code of Federal Regulations.

On June 25, 2014, Bayview completed a foreclosure action and the Atlantic City Superior Court of New Jersey, Chancery Division, issued a writ of execution ordering the Sheriff to sell the property. Michael Goldstein, who does business as Plaintiff Goldstein Group Holdings, Inc. (hereinafter "Goldstein"), is in the business of buying and selling foreclosed properties and default notes, and became interested in the 107 N. Brighton Avenue property. Goldstein contacted Bayview and negotiated the sale of the mortgage from Bayview to Goldstein for $100,000.00. Goldstein did this to obtain Bayview's right to bid the amount of the mortgage at the Sheriff's auction, and it would deter other bidders and limit the amount of transfer tax Goldstein would have to pay based on the auction amount. Goldstein did not inspect the building because mortgage companies and receivers do not allow an interior inspection of the buildings prior to the Sheriff's auction.

Around August 5-7, 2014, Goldstein contacted the Defendant insurance companies, informing them that the property had been placed in a receivership in 2011, but that the receiver had never notified the insurance companies about the flood damage caused by Sandy.

On August 7, 2014, Bayview assigned the mortgage to Goldstein and executed and filed with the Superior Court a public

notice that Goldstein had the right to bid the mortgage balance at the auction. On August 21, 2014, the Sheriff held a public sale. Goldstein purchased the property with the high bid of $100.00.[2]

Goldstein filed his proof of loss with Defendants on September 12, 2014.[3] In October 2014, both Defendants denied Goldstein's claim, explaining that the policy prohibits transfer of a SFIP claim after the date of the actual flood damage. On December 4, 2014, Goldstein filed an appeal of Defendants' decisions with FEMA. FEMA determined that even though the SFIP allows the transfer of a flood insurance policy to a new owner of a property, it does not permit the transfer of a preexisting claim for damage from a flood event that occurred prior to the transfer of the policy. FEMA found that a property holder or a mortgagee cannot claim coverage for damage to a property that

[2] At some time between August 21, 2014 and February 25, 2016 (the date of Goldstein's deposition), Goldstein sold the property to an unrelated investor for $100,000.

[3] A typical flood loss claim is required to be submitted within 60 days of the date of loss, but an extension granted by FEMA gave SFIP insureds with losses sustained in Sandy until October 29, 2014. Defendants argue that Goldstein's proof of loss was not actually submitted, and what he ported to have submitted was not proper in substance and form. Defendants argue that this fact alone precludes judgment in Goldstein's favor. Because this issue is not relevant to the Court's resolution of the parties' motions, the Court accepts for the purpose of this Opinion that Goldstein's proof of loss was proper.

occurred when they did not own the property and were not the named insured at the time of the flood loss.

Under the SFIPs, Goldstein was afforded one year from the date of Defendants' denials to file suit against them. Goldstein timely filed the instant action, contending that because Bayview, as mortgagee and an insured under the policies, assigned the mortgage – not a post-flood claim - to him, that assignment included proceeds from any recovery from the SFIPs. Goldstein, Hartford, and New Hampshire have all moved for summary judgment in their favor. Goldstein argues that he is entitled to judgment as to liability on his breach of contract and breach of good faith and fair dealing claims, with the issue of damages to be determined. Defendants argue that they are entitled to judgment in their favor because they properly denied his claims.

## DISCUSSION

### A. Subject Matter Jurisdiction

Original exclusive jurisdiction is conferred upon this Court pursuant to the National Flood Insurance Act of 1968, 42 U.S.C. § 4001 et seq. This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 4053 and 42 U.S.C. § 4072, which grant this Court original exclusive jurisdiction to hear and determine an action involving a disallowance or partial disallowance by WYO carriers of a plaintiff's flood insurance

claim, without regard to the amount in controversy.

**B. Standard for Summary Judgment**

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp.

v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

**C. Analysis**

The parties present various arguments to support their positions,[4] but the crux of the matter is whether Bayview's post-loss assignment of the mortgage to Goldstein included Bayview's rights to the insurance proceeds as a named insured on the date of loss. The Court finds that the language of the SFIP is clear that an assignee of a mortgage cannot collect on the insured mortgagee's policy for a loss that predates the assignment.

"'It is well settled that federal common law governs the

[4] The parties also dispute (1) whether Goldstein filed a proper proof of loss which would trigger a claim, as noted above, supra note 3, and (2) whether Goldstein's sale of the property for the same amount he purchased it eliminates any claim to damages, and eliminates his standing. The Court does not need to address these arguments.

interpretation of the SFIP at issue here.'" McDowell v. USAA General Indemnity Company, 2016 WL 4249487, at *4 (D.N.J. 2016) (quoting Torre v. Liberty Mut. Fire Ins. Co., 781 F.3d 651, 653 (3d Cir. 2015)); 44 C.F.R. Pt. 61, App. A(1) and A(2), Art. IX; 44 C.F.R. Pt. 61, App. A(3), Art. X (What Law Governs). The terms and conditions of the SFIP must be strictly construed. Id. (citing Suopys v. Omaha Property & Cas., 404 F.3d 805, 809 (3d Cir. 2005); Kennedy v. CNA Ins. Co., 969 F. Supp. 931, 934 (D.N.J. 1997), aff'd, 156 F.3d 1225 (3d Cir. 1998)).

The "Definitions" section of the SFIP provides:

> A. In this policy, "you" and "your" refer to the insured(s) shown on the Declarations Page of this policy and your spouse, if a resident of the same household. "Insured(s)" includes: Any mortgagee and loss payee named in the Application and Declarations Page, as well as any other mortgagee or loss payee determined to exist at the time of loss in the order of precedence. "We," "us," and "our" refer to the insurer.

44 C.F.R. Pt. 61, App. A(1), A(2) and A(3), Section II; (Docket No. 37-4 at 3.)

Goldstein argues that several factors support his claim to the SFIPs' insurance proceeds for the property's Sandy damage: (1) Goldstein was assigned the mortgage, which included being a named insured under the SFIPs issued by Hartford and New Hampshire, and not simply Bayview's claim to funds under the policy; (2) assignments of insurance proceeds are permitted in New Jersey; (3) New Jersey courts have found that assignees

assume the same rights and responsibilities as the assignors previously possessed; and (4) had Bayview submitted timely and proper claims to Defendants, Defendants admit that payable claims to Bayview would have existed, and therefore, because Goldstein assumed the same rights that Bayview held under the policies, and he submitted timely and proper claims to Defendants, payable claims to Goldstein exist.

The Court does not dispute that Goldstein's arguments are generally valid with regard to typical insurance policies, but those arguments do not override the language of the SFIP, or the nature of the National Flood Insurance Program, which pays claims from federal funds.

The SFIP is unambiguous: an insured is "[a]ny mortgagee and loss payee named in the Application and Declarations Page, as well as any other mortgagee or loss payee determined to exist at the time of loss." Goldstein is not a mortgagee or loss payee named in the Application and Declarations Page of the Hartford and New Hampshire SFIPs. Goldstein is not an "other mortgagee" who was "determined to exist at the time of loss." Thus, Goldstein is not an insured under the SFIPs.

Additional provisions in the SFIP confirm that Goldstein is not entitled to insurance proceeds from the Hartford and New Hampshire policies. The "Mortgage Clause" states, "Any loss payable under Coverage A – Building Property will be paid to any

mortgagee of whom we have actual notice as well as any other mortgagee or loss payee determined to exist at the time of loss, and you, as interests appear." (Docket No. 37-4 at 16.) Again, Goldstein is not "any other mortgagee or loss payee determined to exist at the time of loss."

The "Loss Payment" section provides, "We will adjust all losses with you. We will pay you unless some other person or entity is named in the policy or is legally entitled to receive payment." (Docket No. 37-4 at 16.) Goldstein argues that the language "some other person or entity . . . is legally entitled to receive payment" encompasses him, because the mortgage assignment caused him to be "legally entitled to receive payment." This argument is refuted by the Definitions and Mortgage Clause provisions, as explained above, and it is also refuted by the "Amendments, Waivers, Assignment" provision. That provision states, "This policy cannot be changed nor can any of its provisions be waived without the express written consent of the Federal Insurance Administrator . . . . You may assign this policy in writing when you transfer title of your property to someone else, except under certain conditions," i.e., when the policy covers only personal property or covers a structure during construction. (Docket No. 37-4 at 13.)

Thus, if Bayview had assigned to Goldstein the mortgage along with SFIPs that were in effect at the time of assignment,

and the insured followed the procedures for assignment of the policies as set forth by the SFIPs and federal regulations,[5] such an assignment may have been proper.[6] Then, if after the assignment of SFIPs to Goldstein the property suffered flood damage, Goldstein would be a "mortgagee or loss payee determined to exist at the time of loss" and would be "legally entitled to receive payment." This scenario, however, is not the situation here.

Further confirming that Goldstein is not "legally entitled to receive payment" under the Hartford and New Hampshire SFIPs is a bulletin issued by FEMA with regard to the assignment of interest in claim payments to third parties. See David I. Maurstad, Assistant Administrator for Federal Insurance, Federal Insurance and Mitigation Administration, "Inclusion of Law Firms on Checks Arising Out of NFIP Claims," available at https://bsa.nfipstat.fema.gov/wyobull/2016/w-16078.pdf. The

[5] The procedure for assignment of an SFIP is set forth in FEMA's Flood Insurance Manual, Effective October 1, 2016, available at https://www.fema.gov/media-library-data/1478091260016-e5df86570c38453818a95ec2a62479a5/12_endorsement_508_oct2016.pdf ("A building owner's flood insurance building policy may be assigned to a purchaser of the insured building with the written consent of the seller. The seller must sign the assignment endorsement on or before the closing date.").

[6] It does not appear that the Hartford and New Hampshire flood policies were renewed after their expiration in December 2, 2012 and September 8, 2013, so it does not appear that valid, in-force SFIPs could have been assigned to Goldstein at the time of the August 7, 2014 mortgage assignment.

October 14, 2016 memorandum was drafted to provide guidance to WYO coordinators and NFIP servicing agents when WYO companies and vendors acting on behalf of the NFIP receive requests to include attorneys, law firms, public adjusters and other lien holders as co-payees on NFIP checks. Quoting the Definitions section of the SFIP, FEMA explained that "[t]hird parties, such as attorneys, law firms and public adjusters, whose interest did not exist at the time of the loss are not loss payees under the SFIP." Id.

FEMA also cited the Assignment of Claims Act, 31 U.S.C. § 3727 et seq., which has a "primary purpose . . . to prevent persons of influence from buying up claims against the United States, which might then be improperly urged upon officers of the Government, and that a second purpose was to prevent possible multiple payment of claims, to make unnecessary the investigation of alleged assignments, and to enable the Government to deal only with the original claimant." U.S. v. Shannon, 342 U.S. 288, 291 (U.S. 1952) (internal quotations and citations omitted).

The FEMA bulletin sets out the conditions necessary to assign a claim against the United States to a third-party: "An assignment may be made only after a claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued." FEMA Bulletin (quoting 31 U.S.C. § 3727(b)).

FEMA notes that the Act applies to NFIP claim payments. Id. (citing Diamond v. FEMA, 689 F. Supp. 163 (E.D.N.Y. 1988)).

Thus, if a party seeks to assign a claim that is to be paid from NFIP federal funds, the assignment is only permitted after the claim has been approved. In this case, Goldstein could never be paid from federal funds under the Hartford and New Hampshire SFIPs because such payment was not approved before he purportedly obtained the assignment of rights to such payment.

Even though, as Goldstein points out, Bayview did not assign him only its claim to payment under the SFIPs, but rather assigned the entire mortgage, the reasoning of FEMA's bulletin, as well as the purpose of Assignment of Claims Act, affirms that such a distinction is irrelevant under the circumstances of a post-loss claim to be paid from federal funds.[7]

**CONCLUSION**

The plain language of the SFIPs, which must be strictly

[7] Goldstein also argues that the concerns to be prevented by the Assignment of Claims Act are not present here, since he was not even aware of the un-claimed insurance when he contacted Bayview about the property, and there is no chance for duplicitous claims. In contrast, Defendants argue that preventing Goldstein from obtaining a windfall paid from federal funds is the upmost concern of the Act, especially when no repairs to the property would be made with the funds and Goldstein no longer owns the property. The Court's decision is supported by the Act's guiding principle that claims on the U.S. Government payable out of the treasury should be closely examined, but the Court's decision does not hinge on the application of the Act, but rather the plain language of the SFIPs.

construed, does not include Goldstein as a covered person or entity under the policies for the October 29, 2012 flood damage. The plain language of the SFIPs is also in line with the Assignment of Claims Act, which precludes payment from federal funds to a party who has not been deemed to be entitled to those federal funds. Accordingly, Goldstein's claim that he is entitled to payment of the insurance proceeds from the Hartford and New Hampshire SFIPs for flood damage to 107 N. Brighton Avenue, Atlantic City, New Jersey caused by Superstorm Sandy on October 29, 2012 fails as a matter of law. Defendants' motions for summary judgment must therefore be granted, and Goldstein's motion for summary judgment must be denied.

An appropriate Order will be entered.

Date: February 1, 2017

s/ Noel L. Hillman
NOEL L. HILLMAN, U.S.D.J.

At Camden, New Jersey